UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-CV-61-KSF

GENTILE COLE                                                                                    PLAINTIFF

VS:              **MEMORANDUM OPINION AND ORDER**

DR. GROWSE, ET AL.                                                                         DEFENDANTS

Gentile Cole ("Cole"), an inmate confined at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), filed a *pro se* complaint asserting civil rights claims under 28 U.S.C. § 1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) and medical malpractice claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. [Record No. 2] Cole asserted that the Defendants caused him permanent injury by failing to timely perform surgery on his previously-injured fourth finger and sought monetary damages.

The Court has previously entered an Order dismissing the civil rights claims under *Bivens* as time-barred, and directing service upon the United States for the claims under the FTCA. [Record No. 5] The United States has now filed a Motion to Dismiss, or In the Alternative, Motion for Summary Judgment [Record No. 14], and Cole has filed his Response thereto [Record No. 26]

**I.      Factual Background**

In May 2002, Cole received an injury to his right fourth finger when a cell door closed on his

1

hand at a federal prison in Kansas City, Missouri.[1]  In 2003 and 2004, while still in federal custody at prisons in Oklahoma and Wisconsin, Cole was seen by prison doctors regarding his injured finger and limited range of motion.  Cole was transferred to FMC-Lexington in September 2004 for non-medical reasons.  Both before and after his transfer to FMC-Lexington, Cole has worked as a unit orderly and in the food services, mechanical services paint shop, and education departments.

On March 4, 2005, Cole's finger was examined by Dr. Vaughan, a contract orthopedic physician for the BOP.  Vaughan concluded that the immobility in Cole's finger "can be surgically corrected," and recommended that Cole be seen by a plastic surgeon.  Later in March, Cole was also examined by BOP mid-level practitioner Dr. Villaneuva, who prescribed pain killers to address the pain in the finger and recommended work restrictions for Cole.  After these visits, BOP physician Dr. Marrero ordered X-rays of Cole's finger.  The X-rays were performed in March 2005, and indicated that a ruptured tendon in Cole's finger was the cause of the movement restriction, but that no other acute injury was present.

On April 25, 2005, Dr. Moore, an outside plastic surgeon under contract with the BOP, examined Cole.  Cole alleges that Moore concluded that his finger could be improved if surgery were performed promptly.  However, Dr. Moore's consultation sheet states: "I don't feel that surgery will have any significant chance of success at this time.  I don't think deformity will get worse with time."  Consistent with the plastic surgeon's recommendations, Dr. Marrero and the BOP took no further action regarding surgery on Cole's finger.

---

[1] In its motion, the United States asserts that the initial injury was to Cole's right third finger, not his right fourth finger, and occurred prior to his incarceration by the Bureau of Prisons ("BOP"), rather than during such incarceration.  Because the Court is evaluating Cole's claim on a motion for summary judgment, it assumes Cole's version of the facts to be true for purposes of this discussion.

2

On April 5, 2006, Cole sent a letter to the BOP formally requesting administrative settlement of his claim that FMC-Lexington medical staff acted negligently by not promptly directing surgery on his finger. In an August 28, 2006 letter, the BOP formally rejected his request for settlement. In that letter, the BOP rejected any claim arising more than two years prior to the date of Cole's April 5, 2006, request for administrative settlement as time-barred. With respect to claims arising out of conduct in early 2005, the BOP asserted that because Dr. Moore concluded that surgery on Cole's finger would have little chance of improving its function, the BOP's failure to order further surgery was not negligent, and therefore denied administrative settlement. On February 27, 2007, Cole filed his Complaint in this action.

## II. Discussion

### A. Summary Judgment Standard

Because the United States has submitted an affidavit and exhibits in support of its motion and invited the Court to consider materials extrinsic to the face of the Complaint, the Court must treat its motion to dismiss as one seeking summary judgment pursuant to Rule 56. FED. R. CIV. P. 12(b); *Mays v. Buckeye Rural Elec. Co-op, Inc.*, 277 F.3d 873, 877 (6th Cir. 2002) (district court may properly consider motion to dismiss as one for summary judgment when invited to consider matters outside the pleadings); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

Rule 56 requires the entry of summary judgment for the moving party if "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992). The moving party initiates the process by asserting that there is not sufficient evidence to uphold a jury verdict in the nonmovant's favor on at least one essential element of the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005); *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004). If the totality of the evidence submitted "would require a directed verdict for the moving party," summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

In response, the nonmovant must demonstrate the existence of specific facts which show that there is a genuine issue of material fact for trial. He cannot rely merely on the pleadings but must specifically designate affidavits, depositions, interrogatory responses, and admissions which support his position on the facts. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986); *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). The nonmovant's evidence must be sufficient to support a jury's verdict in his favor. *Anderson*, 477 U.S. at 251. If the applicable substantive law requires the nonmovant to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

In its motion, the United States argues that (1) Cole's claims arising out of conduct in 2003 and 2004 are time-barred by the FTCA's two-year statute of limitations, 28 U.S.C. § 2401(b), and (2) claims within the limitations period and properly exhausted fail as a matter of law in light of the unchallenged assessment of Dr. Moore that surgery would not improve the function of his finger and therefore was not appropriate to treat his injury. In his response, Cole argues that the "continuing wrong" doctrine tolled the accrual of his claims, and that "the last act in this continuing wrong has yet to transpire." Response at pg. 5. Cole has not responded to the United States' arguments regarding the substance of his medical malpractice claims. The United States did not file a Reply in further support of its motion.

      **B.**      **The Statute of Limitations Bars Claims Arising in 2003 and 2004**.

As a sovereign entity, the United States may only be sued with its consent. *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"). The FTCA constitutes a limited consent to be sued, but such consent is strictly limited to the terms of the enabling statutes. *Id.*

To avail himself of the FTCA's limited waiver, a potential claimant must first present a request for administrative settlement to the responsible agency. 28 U.S.C. § 2675(a). The request must be filed within two years after the claim accrues, or it is forever barred. 28 U.S.C. § 2401(b). Thus any claim accruing more than two years before the request is filed is barred, and the district court lacks subject matter jurisdiction to entertain it. *In re: Franklin Savings Corp.*, 385 F.3d 1279 (10th Cir. 2004) (district court lacks subject matter jurisdiction to entertain FTCA claim where plaintiff has failed to satisfy FTCA's timing requirements).

The United States contends that to the extent Cole's Complaint asserts claims which accrued prior to April 5, 2004 -- two years before he mailed his request for administrative settlement -- they are time barred. Cole responds that under the "continuing wrong" doctrine, his claims arising out of conduct occurring before that date nonetheless did not accrue (indeed, have not yet accrued) because he has been continuously under the care of BOP physicians. Cole relies upon *Harrison v. Valentini*, Ky., 184 S.W.3d 521 (2005) in support of his position. In *Harrison*, the Kentucky Supreme Court held that where the surgery complained of occurred outside the limitations period but the plaintiff remained in the defendant physician's care and his last appointment was within the limitations period, the plaintiff's claim did not accrue for limitations purposes until at least the date of the last appointment under the doctrine of "continuing wrongs." *Harrison*, 184 S.W.3d at 525.

Cole's reliance upon *Harrison* is misplaced in two respects. First, the FTCA renders the United States "liable in tort for certain damages caused by the negligence of any employee of the Government 'if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Johnston v. United States*, 85 F.3d 217, 219 (5th Cir. 1996) (quoting 28 U.S.C. § 1346(b)). Thus if a government employee's conduct would render them liable for negligence under Kentucky law, the United States may be held accountable in tort under the FTCA. But while Kentucky tort law governs the viability and contours of the right, federal law governs when the claim accrues. *Johnston*, 85 F.3d at 219; *Stoleson v. United States*, 629 F.2d 1265 (7th Cir. 1980). If a "continuing wrong" doctrine applies to accrual of his claim, it must be found to exist as a matter of federal, rather than Kentucky, law.

The Sixth Circuit has not explicitly recognized the availability of such a doctrine under the FTCA, but several other circuit courts of appeals have applied a continuing violations doctrine to

6

accrual of a cause of action under the FTCA, *cf. Cannon v. United States*, 338 F.3d 1183 (10th Cir. 2003) (FTCA claims continue to accrue for a continuing tort as long as the tortious conduct continues, although plaintiff's recovery is limited to two-year period dating back from when plaintiff's complaint was filed), including in the context of a medical malpractice action. *Schunk v. United States*, 783 F.Supp. 72, 82 ( E.D.N.Y. 1992) (under "continuous treatment" doctrine, medical malpractice statute of limitations may be tolled where plaintiff was under continuous care of same doctor or hospital during course of treatment).

However, the doctrine is designed to avoid the unfair application of the limitations doctrine where, because the patient was under the ongoing care of an allegedly-negligent physician, he or she may not have had reason to question the appropriateness or effectiveness of treatment received from the physician in whom the patient has placed their trust or to seek alternative medical or legal advice. *Dundon v. United States*, 559 F.Supp. 469, 473 (E.D.N.Y. 1983). Accordingly, courts consistently refuse to apply the doctrine where the patient has received care from a number of physicians or hospitals. *Schunk*, 783 F.Supp. at 82 (refusing to apply doctrine where patient received care from numerous Veterans Administration physicians and hospitals); *Lazarini v. United States*, 898 F. Supp. 40 (D. Puerto Rico 1995) (course of medical treatment by separate individuals at Veterans Administration hospitals over forty years did not constitute "continuing tort" to toll accrual of limitations period), *aff'd*, 89 F.3d 823 (1st Cir. 1996); *Ciccarone v. United States*, 350 F.Supp. 554, 562-63 (E.D. Pa. 1972) (same), *aff'd*, 486 F.2d 253 (3rd Cir. 1973). Because the treatment received by Cole in 2003 and 2004 was received from different BOP physicians at federal prisons located in different jurisdictions, the "continuous treatment" doctrine did not act to toll the accrual of his claims. Accordingly, any claims arising out of Cole's treatment before April 5, 2004, are time-

barred, and the Court therefore lacks subject matter jurisdiction to entertain them. *Franklin Savings*, 385 F.3d at 1287.

  **C.** **Claims Arising in 2005 Must be Dismissed**.

  The genesis of Cole's claim that the BOP failed to properly treat his finger is Dr. Vaughan's preliminary assessment on March 4, 2005, that an operation on Cole's finger could improve its range of motion. However, Dr. Vaughan referred Cole's case to a plastic surgeon for further assessment. The BOP responded to this recommendation by providing Cole with medication to manage the pain in his hand, relieving him from further work responsibilities, having two other medical practitioners examine him during the month of March, and having x-rays taken of his hand to ensure Cole had not sustained any acute injury. The BOP also accepted Dr. Vaughan's recommendation for an outside referral, and Cole was seen by plastic surgeon Moore on April 25, 2005. As a result of his examination, Dr. Moore concluded that: "I don't feel that surgery will have any significant chance of success at this time. I don't think deformity will get worse with time." Consistent with that recommendation, the BOP did not order surgery for Cole's finger.

  In *Heavrin v. Jones*, Ky.App., 2003 WL 21673958 (2003), the Kentucky Court of Appeals set out the elements of a cause of action for medical malpractice under Kentucky law:

> To establish a prima facie case of medical malpractice, a plaintiff must introduce evidence, in the form of expert testimony, demonstrating (1) the standard of care recognized by the medical community as applicable to the particular defendant, (2) that the defendant departed from that standard, and (3) that the defendant's departure was a proximate cause of the plaintiff's injuries.

*Id*. at *2. The United States' motion for summary judgment asserts that Cole has not presented sufficient evidence to uphold a jury verdict that the medical care provided by the BOP through its physicians fell below the applicable standard of care. The Court agrees. The United States points

8

to the uncontradicted conclusion of Dr. Moore that surgery would not have "***any*** significant chance" of improving Cole's function in his finger. Rule 56(e) required Cole to meet this challenge by pointing to specific facts shown in affidavits, depositions, interrogatory responses, and admissions which support his position. FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 251-53. Cole has not challenged this assertion in his response and has not provided any evidence to rebut it. Where the totality of the evidence submitted "would require a directed verdict for the moving party," summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

This is particularly true where, as here, the applicable substantive law requires the non-movant to meet a higher burden of proof. Under such circumstances, the non-movant's evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey*, 113 F.3d at 642; *Moore*, 992 F.2d at 1444. Kentucky law requires a medical malpractice plaintiff to support his allegation that the defendant physician's treatment did not meet the applicable standard of care with expert testimony to this effect as a part of his *prima facie* case. *Heavrin*, 2003 WL 21673958 (2003); *Andrew v. Begley*, Ky.App., 203 S.W.3d 165 (2006) ("To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper.") Cole has not offered any expert testimony which suggests that his medical treatment was below the applicable standard of care, and the evidence which is present in the record -- from a medical practitioner specializing in this field -- directly contradicts his core assertion that surgery was required to meet that standard of care. Cole having failed to produce any evidence that his treatment fell below the applicable standard of care, let alone support for that contention in the form of expert testimony, requires that summary judgment be granted for the United States.

**III.   Conclusion**

Accordingly, **IT IS ORDERED** as follows:

1.   Defendant's Motion to Dismiss, or In the Alternative, Motion for Summary Judgment [Record No. 14] is **GRANTED.**

2.   The Plaintiff's Complaint [Record No. 2] is **DISMISSED WITH PREJUDICE.**

3.   An appropriate Judgment will be entered contemporaneously herewith.

This March 12, 2008.



Signed By:

*Karl S. Forester*  KSF

United States Senior Judge